be enforced only with consent of plaintiff or by legal process.

No such agreement was made in this case. The plaintiff did not consent for the defendant to enter his house and to repossess the instrument. The plaintiff merely bound himself to return the piano upon written demand at any time after he had failed to make any payment when due.

Our conclusion is that the defendant is liable in damages and have decided to fix the amount at $350.

The defendant has prayed in reconvention for judgment for the balance due on the piano with recognition of its vendor's privilege. This the defendant is entitled to.

For the reasons assigned, the verdict of the jury and the judgment based thereon are annulled and set aside, and it is now ordered that the plaintiff have judgment against the defendant in the sum of $350, with legal interest from judicial demand, to wit, July 31, 1922.

It is further ordered:

That defendant have judgment in reconvention against the plaintiff for whatever balance may be due on the piano with interest as provided in the contract, in excess of the amount allowed plaintiff herein in principal and interest.

That the vendor's privilege be recognized on the piano for said balance due, and that defendant pay costs of both courts.

---

(112 So. 711)

No. 26376.

**LOWTHER et al. v. SOUTHERN CARBON CO.**

April 25, 1927.

*(Syllabus by Editorial Staff.)*

1. **Compromise and settlement** ⊛15(2)— **Plaintiff who had compromised pending suit was estopped to sue to enjoin operating carbon plant and for damages.**

In suit for damages and to enjoin operation of carbon plant near plaintiffs' residence, sustaining plea of estoppel as to one plaintiff who had, for consideration, compromised his claim pending suit, was proper.

2. **Nuisance** ⊛49(5)—**Evidence, not showing damage from operation of carbon plant near residence, held to support judgment for defendant.**

In action for damages and to enjoin operation of carbon plant near plaintiffs' residence, evidence failing to show damage therefrom *held* to support judgment for defendant.

Appeal from Sixth Judicial District Court, Parish of Ouachita; Fred M. Odom, Judge.

Suit by Charles A. Lowther, individually and as tutor for minors Marvin and Wesley Lowther, against the Southern Carbon Company. From a judgment rejecting plaintiffs' demands, they appeal. Affirmed.

M. C. Redmond, of Monroe, and Todd & Todd, of Bastrop, for appellants.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, for appellee.

BRUNOT, J. This is a suit for damages and for an injunction restraining and prohibiting the defendant from conducting certain operations of a carbon plant on land owned by it within a distance less than two miles from the residence of the plaintiffs. The suit was tried on the merits, and, from a judgment rejecting the plaintiffs' demands, they appealed.

The petition alleges that plaintiffs own a tract of land, in indivision, on which they reside; that defendant owns land adjoining the plaintiffs' property; that, during the two years preceding the filing of the petition in this suit, the defendant erected a carbon manufacturing plant on its said property near the division line separating its property from that of the plaintiffs and in close proximity to the plaintiffs' residence; that, during the year prior to November 27, 1920, the operation of defendant's plant on said site damaged the plaintiffs to the extent of $6,000 for this, to wit:

"That the apparatus for separating the liquefied petroleum gas or casing-head gasoline is situated within 50 feet of petitioners' said dwelling house; and the liquefied petroleum gas or casing-head gasoline, so separated from the natural gas, is conducted by pressure through pipes into six large storage tanks of 8,000 or 10,000 gallons' capacity each, which storage tanks are situated within 60 feet of petitioners' said dwelling house.

"That, in the ordinary process of operation, there is a continuous escaping of the essence of gas and fumes from the sa.d separating apparatus, filling the air in and around petitioners' said dwelling. That frequently the tremendous pressure of the gas in the pipes and fittings to the said separating apparatus blows off ends of pipes, blows valves open, and such like, blowing the gas into and around petitioners' said dwelling house.

"That the said gas fumes are offensive to the smell and injurious to the health, and petitioner and his said minor children have suffered discomfort, annoyance, and injury to their health on account of said Southern Carbon Company blowing such fumes and gas into and around pe titioners' said dwelling; and that it will require at least $1,000 each. for petitioner and his said minor children to repair the injuries they have suffered within the past year on this account, which amounts petitioners are entitled to recover of said Southern Carbon Company.

"Petitioners further represent that great volumes of dense smoke come and are sent from the burning house of the plant operated by said Southern Carbon Company, into and about petitioners' said dwelling house, and said smoke blackens the said house and the clothes, and all other things in, and around said premises, and is offensive to petitioner and his said children, in being blackened by said smoke, and being offended by the odor of the same, and from its very nature the said smoke is injurious to the health of petitioner and his said children, and that petitioner and his said children have been damaged and injured by said smoke, to the extent of at least $1,000 each for petitioner and his said children, within the past year, which amounts petitioners are entitled to recover of said Southern Carbon Company."

The prayer of the petition is for a judgment in favor of the plaintiffs and against the defendant for $6,000, with legal interest thereon from judicial demand, and for an injunction restraining and prohibiting the defendant—

"from separating or storing any liquefied petroleum gas or casing-head gasoline, or conducting same through pipes, in a less distance than two miles away from petitioners' dwelling house, and * * * from letting, allowing, or permitting any smoke from the burning houses of its plant getting into or about petitioners' said dwelling and premises connected with said dwelling."

The defendant answered the suit, admitted the recital of facts averred in the preliminary paragraphs of the petition, but denied every other allegation therein. Before the case was tried, the following compromise agreement was entered into:

"State of Louisiana, Parish of Ouachita.

"Be it known, that on this the 4th day of June, A. D., 1921; before me, C. H. McHenry, a notary public, duly commissioned, qualified, and acting within and for the aforesaid parish and state, personally came and appeared Chas. A. Lother, who appears herein for himself individually and as the duly qualified natural tutor of his minor children, Marvin Lother and Wesley Lother, and for their use and benefit, all residents of the parish of Morehouse, state of Louisiana, and Southern Carbon Company, a Delaware corporation, herein represented by its attorney, Henry D. Briggs, who declared and said:

"1. That the said Chas. A. Lother, together with his two said minor children, is the owner of the following described land, to wit: Lots 4 and 5 in section 4, Tp. 20 N., R. 5 E. That upon the said above-described * * * land is situated the residence of said Lother and his said minors.

"2. That adjoining said property the said Southern Carbon Company is operating a carbon black manufacturing plant and a gasoline extraction plant.

"3. That in the suit No. 10054 on the docket of the Sixth judicial district court for the parish of Morehouse the said Chas. A. Lother, for himself individually and for the use and benefit of his said minors, is asking for the removal of certain gasoline storage tanks and for judgment against said carbon company restraining it from operating its said carbon black manufacturing plant, and its gasoline extraction plant, on account of danger of explosion and fumes, smokes and smells, all as a nuisance.

"4. That Southern Carbon Company denies all the allegations as made, but for the purpose of compromising and settling the differences,

and putting an end to the litigation now pending, without admitting or acknowledging liability, has agreed with said Lother, for himself, individually, and for the use and benefits of his said minors, as follows:

"(a) To remove the said gasoline storage tanks from their present location, approximately 40 feet from said residence, to a point not less than 275 feet from said residence within 60 days from date hereof and to not store in gasoline storage tanks, liquefied petroleum gas or natural gas gasoline nearer than 275 feet from said residence.

"(b) To pay to said Lother, for himself individually and for the use and benefit of his said minors, the sum of $1,250 in cash for alleged damages already accrued, and any alleged damages that might accrue in the future, on account of fumes, smokes, and smells from the operation of said carbon black manufacturing plant and said gasoline extraction plant.

"(c) For and in consideration of the above sum, receipt of which is hereby acknowledged and full acquittance therefor given, the said Chas. A. Lother, for himself individually and for the use and benefit of his said minors, hereby grants unto the said Southern Carbon Company the right of servitude over and across said above-described lands for the escape of *fumes, smokes, and smells* incident to the operation of said gasoline extraction plant and carbon black manufacturing plant in its present location, which said right of servitude is hereby accepted by said carbon company.

"(d) The said Lother hereby agrees to dismiss the above-mentioned suit forthwith.

"(e) The terms, provisions, and stipulations of this contract shall extend to the heirs, executors, and assigns of both parties hereto.

"Thus done, executed, and signed in the presence of the undersigned legal and competent witnesses and me said notary on the day and date herein first above written. Charles A. Lother, for Himself Individually and as Natural Tutor for His Minors, Marvin Lother and Wesley Lother. Southern Carbon Co., by Henry D. Briggs, Attorney. Attest: J. B. Lamkin. Ann Currey. Carl H. McHenry, Notary Public. [Seal.]"

After the foregoing act of compromise was executed and recorded, the matter rested for about a year, during which time no steps were taken by Charles Lowther to dismiss the suit, but in December, 1922, he had the case assigned for trial. Defendant thereupon filed a plea of estoppel. This plea was heard and sustained as to Chas. A. Lowther, in-

dividually, but it was overruled as to his minor children for the reason that no family meeting was convoked to authorize or ratify the act of compromise, and the suit proceeded to trial on the merits as to these two minors.

Prior to trial defendant excepted to the prosecution of the suit upon the ground that no part of the $1,250 which was paid to Lowther, and no part of the expense which was incurred by defendant in complying with the act of compromise had been tendered to defendant. This exception was referred to the merits, and, when the trial began, defendant objected to the offering of any testimony by plaintiffs for the reason that the act of compromise could not be collaterally attacked. The objection was overruled and the trial proceeded, with the result stated in the first paragraph of this opinion.

We will pretermit considering the force of the exception of lack of tender, or the objection to the offering of testimony in the case, for the reason that this case can be finally disposed of at once on the merits, and it will serve no useful purpose to waste time on nonessential matters.

[1] There can be no question that, in so far as the plaintiff Chas. A. Lowther is concerned, the trial judge properly sustained the defendant's plea of estoppel. Counsel for appellants admit the correctness of this ruling, for, on page 3 of their brief, they say:

"Mr. Lowther, at that time, was represented by another attorney and Lowther compromised his part of this lawsuit, and this suit is being prosecuted by these minor children."

[2] Divested of all surplusage, the items of damage upon which plaintiffs seeks to recover are alleged damages to their health and damage to their property. There is not a scintilla of evidence in the record to show that any one of the plaintiffs suffered the slightest injury to health as the result of the location and operation of defendant's plant near their residence. Nor is there any

evidence to show any estimable property damage. The petition teems with allegations, but the proof fails to establish a single one, except that soot from the smoke of the plant blackened the plaintiffs' house and clothes when the wind blew from the south; but there is no evidence in the record which will enable this court to even approximate to what extent, if any; plaintiffs were damaged thereby. We have gone through the record carefully, and we find that the learned trial judge, in his reasons for judgment, has concisely and accurately summarized the facts. He says:

"Plaintiff Chas. A. Lowther testified that no damage was caused to him or his family on account of the location of the gasoline tanks in close proximity to his house. It is shown that those tanks have been removed to a safe distance from his residence.

"He says that he has never suffered any injury to his health, or that of his family on account of the fumes and smoke from defendant's plant. This is one item of damage alleged on. He has eliminated that phase of his suit.

"Also the danger from the presence of the gasoline tanks has been eliminated, as they have been removed.

"On page 18 Lowther was asked if there was any damage except to his clothes and he said 'I don't know, except anybody afraid to live there, afraid of the tanks.'

"The only other complaint is that the smoke from the carbon black plant is annoying and soils clothing, etc.

"My conclusion on this point is that this is an inconvenience to which plaintiff will have to submit. The court cannot order an industry shut down because some one who happens to live near it suffers a slight inconvenience.

"This plant is located out in the country, in the woods. No one lives near the plant except the employees and the plaintiff. The employees live as near the plant as the plaintiff—that is, some of them do. The manager lives near the plant at Fairbanks, another plant owned by the same company.·

"To grant plaintiff the relief he asks for on any branch of the case would be a grave injustice."

The judge might have added that the record discloses that the establishment of defendant's plant gave plaintiffs' property a rental value that it never enjoyed before, and, while plaintiffs have doubtless suffered some annoyance and inconvenience, they have profited financially by the erection and operation of defendant's plant. State v. Brunot, Judge, 112 La. 425, 36 So. 481; Irwin v. Telephone Co., 36 La. Ann. 772; 20 R. C. L. 479.·

For the reasons stated, the judgment appealed from is affirmed, at appellants' cost.